GOLER METROPOLITAN APARTMENTS, INC. v. JUANITA WILLIAMS

No. 7821DC1001

(Filed 20 November 1979)

1. Landlord and Tenant § 13— federally subsidized housing project—entitlement to continued occupancy—eviction procedure

   A tenant in a federally subsidized low-income housing project has an "entitlement" to continued occupancy and cannot be evicted until certain procedural protections have been afforded him, including notice, confrontation of witnesses, counsel, and a decision by an impartial decision maker based on evidence adduced at a hearing.

2. Landlord and Tenant § 13— federally subsidized housing project—propriety of month-to-month tenancy

   A month-to-month tenancy after the initial lease period of one year can exist in a federally subsidized low-income housing project, and defendant's month-to-month tenancy continued without interruption where plaintiff landlord failed to evict defendant pursuant to HUD eviction procedures.

3. Landlord and Tenant § 13— month-to-month tenant—federally subsidized housing—damages for wrongful eviction

   A month-to-month tenant in a federally subsidized housing project who was wrongfully evicted was entitled to recover damages under G.S. 42-36 for the loss of her security deposit, her moving expenses, the cost of transfer and storage of her furniture, and the loss of her entitlement to federal rental subsidy payments from the time of her eviction until she obtained a reversal of the eviction order.

APPEAL by defendant from *Tash, Judge.* Judgment entered 22 September 1978 in District Court, FORSYTH County. Heard in the Court of Appeals 20 August 1979.

On 6 August 1973, defendant Williams entered into a lease agreement with the Goler Metropolitan Apartments (Goler), located in Winston-Salem, North Carolina. Goler operates under contract with the Secretary of Housing and Urban Development (HUD), pursuant to Sections 8 and 236 of the National Housing Act as amended, and is thereby subject to applicable HUD regulations, specifically 24 C.F.R. § 450, Subchapter J governing tenant

eviction procedures. The lease agreement, as approved by HUD, provided that upon expiration of the fixed term of one year, the lease would be "automatically renewed for successive terms of one month each" at the stated monthly rental. The lease also provided that "[e]ither party may terminate this lease at the end of the initial term or any successive term by giving thirty (30) days written notice in advance to the other party."

On 24 February 1977, Goler notified defendant in writing that she had 30 days to vacate her apartment. Another notice to vacate was sent to defendant on 28 March 1977. Upon defendant's continued occupancy, Goler instituted an action in summary ejectment against defendant on 4 April 1977. After hearing, at which defendant appeared, judgment was entered against her, and a writ of possession was issued, putting Goler in possession of the apartment. Defendant appealed to District Court and filed an answer and counterclaim alleging that Goler had not complied with applicable HUD regulations in the eviction process, and asking for damages for wrongful eviction pursuant to G.S. 42-36.

On 4 November 1977, defendant moved for summary judgment. After hearing, the court ruled that, as a matter of law, defendant was wrongfully dispossessed in that Goler failed, in its letters of 24 February 1977 and 28 March 1977, to advise defendant of her right to present a defense, as required by 24 C.F.R. § 450.4(a), and that Goler failed to properly serve notice on defendant pursuant to 24 C.F.R. § 450.4(b). An order of partial summary judgment was thereby issued on behalf of defendant, leaving the issue of damages for trial.

Pursuant to G.S. 42-36, a judgment for defendant was entered on 22 September 1978, awarding defendant recovery for the loss of her security deposit, her moving expenses, the cost of transfer of her furniture into storage, one month's storage fee, and one month's rental subsidy, as provided for by Sections 8 and 236 of the National Housing Act. Award of rental subsidy for one month was based on the Court's ruling that pursuant to the lease agreement entered into by Goler and defendant, defendant held a month-to-month tenancy at the time of her being wrongfully evicted, and therefore her loss of entitlement to federal subsidies was limited to one month.

From entry of judgment limiting defendant's damages for loss of her rental subsidies to one month, defendant appeals.

*Wagner and Wagner, by David H. Wagner, for plaintiff appellee.*

*Paul Sinal, of Legal Aid Society of Northwest North Carolina, Inc., for defendant appellant.*

MORRIS, Chief Judge.

The first question on appeal is whether, in light of recent decisions tending to expand a tenant's right of occupancy in public housing, tenancy in a federally subsidized low-income housing project can exist on a month-to-month basis. We hold that such a tenancy is consistent with the federal scheme of providing low-cost housing to qualified persons.

[1] It has been recently established that a tenant in a federally subsidized low-income housing project enjoys substantial procedural due process rights under the Fifth and Fourteenth Amendments. *E.g., Caramico v. Secretary of the Department of HUD,* 509 F. 2d 694 (2d Cir. 1974); *Lopez v. Henry Phipps Plaza South, Inc.,* 498 F. 2d 937 (2d Cir. 1974); *Joy v. Daniels,* 479 F. 2d 1236 (4th Cir. 1973); *Escalera v. New York City Housing Authority,* 425 F. 2d 853 (2d Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed. 2d 91 (1970). Under these decisions, a tenant in a federally subsidized housing project has an "entitlement" to continued occupancy, and to that extent cannot be evicted unless and until certain procedural protections have been afforded him, including notice, confrontation of witnesses, counsel, and a decision by an impartial decision maker based on evidence adduced at a hearing. *Joy v. Daniels, supra; Caulder v. Durham Housing Authority,* 433 F. 2d 998, (4th Cir. 1970), *cert. denied,* 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed. 2d 539 (1971). *See Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed. 2d 570 (1972); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d 287 (1970). It has become apparent that by enacting the rules and regulations implementing the National Housing Act, 12 U.S.C. § 1701 *et seq.,* Congress contemplated "more occupancy entitlement than limited leasehold terms", *Joy v. Daniels, supra,* at 1241, and at least some degree of permanency. *Id. See* Note, *Procedural Due Process in Government-Subsidized Housing,* 86 Harv. L. Rev. 880 (1973). The

Fourth Circuit, for example, has stated this policy in the following manner.

"In view of the congressional policies of providing a decent home (with stability and security) for every American family, and of prohibiting arbitrary and discriminatory action, bolstered by the FHA regulations and custom, we find in the scheme of the National Housing Act and the Housing and Urban Development Act of 1965 a property right or entitlement to continue occupancy until there exists a cause to evict other than the mere expiration of the lease." *Joy v. Daniels*, supra, at 1241.

Thus, in their attempt to cure the evils of discriminatory and arbitrary eviction procedures prevalent in federally-subsidized housing, the courts have established a standard of "good cause" as a condition upon which tenancies in public housing may be terminated.

This "good cause" concept is reflected by the recently adopted Housing & Urban Development tenant eviction procedures. 24 Code Federal Regulations §§ 450.1 *et seq.*, Subchapter J (41 Fed. Reg. 43330, 30 September 1976), specifically Section 450.3. These provisions, together with provisions for termination notice in Section 450.4, enumerate the conditions which must be met before a tenancy can be terminated in federally subsidized housing. Given the language cited above, and the strict requirements for termination set out in 24 C.F.R. §§ 450.3 and 450.4, it seems that the obvious intent of HUD was to preserve a tenant's "property interest" in continued occupancy in subsidized housing by restricting the landlord's right to terminate the tenancy held by the tenant.

The lease under consideration in the present case essentially provided for an initial term of one year, and after expiration of the initial term, the lease is to be renewed for successive one-month periods unless either party gives notice of termination. This lease was approved by HUD and was in compliance with the requirement that leases in Section 236 Housing be on forms provided by the FHA. *See* Section 236 Regulatory Agreement ¶ 4(b), Model Form of Lease, U.S. Dept. of Housing and Urban Development, Federal Housing Administration, FHA Form No. 3133, found in INSURED PROJECT MANAGEMENT GUIDE at 243.

Defendant argues that judicial recognition of an "entitlement" to continued occupancy in federal housing abrogates the traditional leasehold estates applicable to rental agreements, and that a "tenancy in a federally subsidized low-income housing project cannot exist on a month-to-month basis." We cannot agree. In *Joy v. Daniels, supra,* the Court held that "the lease provision purporting to give the landlord power to terminate *without cause* at the expiration of a fixed term is invalid." *Id.* at 1241. (Emphasis added.) In that case, the Court held only that a landlord could not terminate at the expiration of a fixed term without good cause. Thus, rather than invalidate the tenancy itself, the Court in *Joy* merely interpreted procedural due process standards as adding an additional condition to those already required before termination of any tenancy is effective.

Furthermore, the federal scheme implicit in the constitutional standards previously discussed, rather than being in opposition to, is consistent with general principles of local property law. It is well settled in North Carolina that a periodic tenancy does not terminate automatically at the end of any particular term. *See generally J. Webster, Real Estate Law in N. C.* §§ 79, 88 (1971); 51C C.J.S. Landlord and Tenant § 146 (1968). Indeed, month-to-month tenancies, like other tenancies from "period to period", continue to renew themselves "indefinitely until they are terminated at the end of one of the periods by a proper notice by either the lessor or the lessee in accordance with the law." *Webster* at § 79, p. 91. Thus, both federal and local lease provisions contemplate continued occupancy until the proper termination requirements are met. In this light, we cannot conclude that the word "tenancy", as used in *Joy* and similar decisions, is to be construed as meaning anything other than the month-to-month tenancy approved by HUD and as used in the lease under consideration.

[2]    The similarities are not exact, however. Under local law, there is no protection against arbitrary or capricious decisions regarding the eviction of tenants. As to federally subsidized low-income housing, however, the previously mentioned due process protections apply to prevent such behavior by landlords. These protections, nevertheless, go to preserve the underlying tenancy, and not to destroy it. In addition, under the tenant eviction provisions in 24 C.F.R. § 450.2, the term "eviction" is defined as "the

dispossession of the tenant from the leased unit as a result of the termination of the tenancy, including a termination prior to the end of a term or at the end of a term", 24 C.F.R. § 450.2(a), obviously contemplating the use of lease terms of definite duration, which may be automatically renewed. It follows in this case that because Goler failed to evict defendant pursuant to HUD eviction procedures,[1] defendant's tenancy continued as a month-to-month tenancy without interruption. See 24 C.F.R. § 450.3. This result is reasonable in light of the fact that Congress has not heretofore pre-empted the function of state and local laws governing summary ejectment and actions for wrongful eviction. See *Anderson v. Denny*, 365 F. Supp. 1254, 1262 (W.D. Va. 1973).

[3] The remaining issue raised by defendant concerns the amount of damages recoverable for wrongful eviction. The trial court held that, pursuant to G.S. 42-36, the damages of defendant which proximately flowed from Goler's wrongful eviction were the loss of defendant's security deposit, her moving expenses, the cost of transfer and storage of her furniture, and the loss of her entitlement to Section 8 and Section 236 subsidies for one month. Defendant argues that the court erred in concluding the defendant held a month-to-month lease and, therefore erred by limiting the loss of her entitlement to federal subsidies to only one month. Although we hold that the trial court properly concluded that defendant held a month-to-month lease at the time of her wrongful eviction, we conclude that it was error to limit defendant's damages to one month.

G.S. 42-36, which provides for damages for wrongful eviction, provides:

"If, by order of the magistrate, the plaintiff is put in possession, and the proceedings shall afterwards be quashed or reversed, the defendant may recover damages of the plaintiff for his removal."

In *Burwell v. Brodie*, 134 N.C. 540, 47 S.E. 47 (1904), our Supreme Court held that a tenant "may recover such damages as proximately resulted" from wrongful eviction. 134 N.C. at 543, 47 S.E. at 48. See generally 52 C.J.S. *Landlord and Tenant* § 461(4) (1968). In the present case, defendant's loss of deposit, her moving ex-

---

1. Evidence of plaintiff's failure to comply with the applicable regulations is uncontradicted.

penses, and subsequent costs for storage are all properly includable under this standard of proximate damages. The particular question in this case, however, concerns the period of time after eviction for which the defendant is entitled to recovery, especially with respect to her right to federal subsidy payments. It is not disputed that defendant continued to qualify for rental subsidies after the time of eviction, and it is clear that but for the act of eviction, defendant would have continued to receive those payments. It is also clear that but for her having been evicted, defendant would have continued to reside at the Goler apartments, pursuant to the automatically renewing month-to-month lease. Thus, it is apparent that, given the improper eviction by Goler, defendant's right to occupancy in the Goler Metropolitan Apartments continued on a month-to-month basis, and would continue until proper eviction procedures were followed.

Generally, the tenant's recovery of damages for wrongful eviction is limited to a period of time subsequent to the date of eviction. More specifically, the tenant is entitled to recover damages only for the time he is prevented from using the premises, and for the period of time he is liable to pay rent. 52 C.J.S. *Landlord and Tenant* § 461(4) (1968). In the case of traditional tenant leases for fixed terms, for example, the tenant may recover for the period of dispossession up to the end of the term. And, under G.S. 42-14, if the requisite notice is not given a sufficient length of time prior to the end of the current term, the parties will be bound, and the landlord liable, for at least one additional term. *Simmons v. Jarman*, 122 N.C. 195, 29 S.E. 332 (1898). Although the applicable federal regulations are silent on this point, it is clear that "[n]o termination shall be valid unless it is in accordance with the provisions of § 450.4", and in compliance with the "cause" provisions of § 450.3. *See* 24 C.F.R. §§ 450.3-.4. Thus, in the case before us, the period of time during which defendant was dispossessed, and for which she would have been liable for rental payments, is that period from her eviction until she obtained a reversal of the eviction order; that is, until judgment. In this respect we agree with defendant that defendant's damages should have been measured according to the period for which she was deprived of her right to occupy the premises, which in this case is the period from eviction until entry of partial summary judgment on 19 July 1978.

We, therefore, remand these proceedings to the trial court for the purpose of computing damages in accordance with this decision.

Remanded.

Judges PARKER and MARTIN (Harry C.) concur.