MAXTON HOUSING AUTHORITY v. ANITA McCOY McLEAN

No. 8316DC1088

(Filed 2 October 1984)

**1. Ejectment § 3— nonpayment of rent—responsible party—ejectment proper**

There was no merit to defendant's contention that she should not be evicted for nonpayment of rent because her husband alone was liable under the doctrine of necessities for rent payments on an apartment leased from plaintiff, since N.C. law allows the Housing Authority to sue in summary ejectment the party, in this case the defendant tenant, whose name alone is on the lease.

**2. Ejectment § 3— nonpayment of utilities—ejectment proper**

A provision in the parties' lease that immediate eviction would result if utilities were discontinued because of nonpayment was enforceable since its intent was to insure safe and sanitary dwelling accommodations, and plaintiff was not required to allege and prove any physical damage to the apartment as a result of the cut-off of utilities. G.S. 42-37.1(c).

Judge BECTON dissenting.

APPEAL by defendant from *McLean, Judge*. Orders entered 20 June 1983 in District Court, ROBESON County. Heard in the Court of Appeals 22 August 1984.

*Mason, Williamson, Etheridge and Moser by Andrew G. Williamson for plaintiff appellee.*

*Lumbee River Legal Services, Inc., by Phillip Wright for defendant appellant.*

BRASWELL, Judge.

Defendant appeals from orders evicting her from her apartment leased from the plaintiff Housing Authority because of nonpayment of rent and utilities. After a careful review of all assignments of error, we find no error and affirm the District Court.

[1] The basic facts of nonpayment of rent and utilities are not disputed. The thrust of the defendant's argument is that her husband alone is liable for the rent payments. We disagree.

The obligations of the defendant accrued pursuant to her written lease agreement with the plaintiff on 1 July 1980. The

lease was executed in her name only. Although defendant married David McLean on 10 October 1981, his name was added to the lease as an occupant, but not as a lessee. On 24 March 1982, David McLean moved out of the defendant's apartment following domestic criminal action by her against him.

The rent for January, February, and March 1982 was not paid. Section 12.1 of the defendant's lease provides that " 'nonpayment of rent' " is a material noncompliance with the lease and a ground for termination. As we interpret the defendant's argument, she contends that she was not individually liable for the rent's nonpayment, but that her husband, under the doctrine of necessities, was responsible for the rent payments and that the Housing Authority ought to sue and collect the rent money due from him. *See Cole v. Adams*, 56 N.C. App. 714, 289 S.E. 2d 918 (1982). Even assuming that the plaintiff could sue David McLean under this or any of the defendant's other theories, the law of North Carolina allows the Housing Authority to sue in summary ejectment the party (in this case the defendant tenant) whose name alone is on the lease. For her failure to comply with a valid provision in her lease, she was properly ordered evicted.

[2]   The lease also provides in section 7 that "[a]ll utilities shall be paid by the Resident. If utilities are discontinued because of nonpayment, this will result in *immediate* eviction." The defendant argues that "[t]he electricity was cut off because Mr. McLean was not paying the bills." She admits that "the electricity was discontinued for nonpayment." She also acknowledges that the water to her apartment was cut off for nonpayment from 28 May 1982 to 22 June 1982. During this time she did not live in the apartment but stayed with her parents.

Defendant also argues that section 7 of the lease, as quoted above, is unenforceable because it "creates an irrebutable presumption that a tenant is unfit for continued occupancy in a Housing Authority unit if the tenant's utilities are discontinued for nonpayment," in violation of her constitutional rights. We disagree. A dwelling without utilities, such as water, sewer, or electricity, certainly creates a situation where unsafe and unsanitary dwelling accommodations would exist, and which are problems properly identified and sought to be corrected by North Carolina's Housing Authority Law, G.S. 157-2. Furthermore, the

plaintiff is not required to allege and prove any physical damage to the apartment has occurred because the utilities have been cut off.

We further disagree that the defendant can defend against the action for eviction for her nonpayment of the utilities by claiming it constitutes a retaliatory eviction.

We clarify that there are two cases between these same parties which were ultimately consolidated for trial and appeal. The first case, filed 11 March 1982, was for the nonpayment of rent. The second case, filed 20 July 1982, involved the nonpayment of her utilities. Under judgment in each case on 20 June 1983 the defendant was found in violation of a respective term of the lease and ordered evicted.

It is true, as reflected in G.S. 42-37.1(a)(4), that "[a] good faith attempt to exercise, secure or enforce any right existing under a valid lease or rental agreement or under State or federal law" affords protection to a tenant within twelve months of the filing of the landlord's action. *See* G.S. 42-37.1(b). However, G.S. 42-37.1(c) provides that notwithstanding the defense of retaliatory eviction "a landlord may prevail in an action for summary ejectment if: (1) [t]he tenant breached the covenant to pay rent or any other substantial covenant of the lease for which the tenant may be evicted, and such breach is the reason for the eviction." The language and terms of the lease are clear and not in dispute. The nonpayment of utilities bills was admitted. This nonpayment is a violation of section 7 of the lease. This violation was a material noncompliance with the lease and authorized the plaintiff to proceed in summary ejectment in the second action. The grounds for the second case were nonexistent when the first case was filed. There was no retaliatory eviction.

Affirmed.

Judge HILL concurs.

Judge BECTON dissents.

Maxton Housing Authority v. McLean

Judge BECTON dissenting.

If I deemed it proper to resolve abstract principles, or, indeed, to decide cases in a vacuum, without reference to the facts of a case, I could easily join the majority in concluding that the Maxton Housing Authority (MHA) properly terminated Anita McCoy McLean's lease. A consideration of the specific facts in this case, however, prompts me to dissent.

Mrs. McLean was evicted from her apartment because of nonpayment of rent and utilities. It must be remembered, however, that at the time Mrs. McLean became a tenant of MHA, she was the unmarried mother of two children and *paid no rent*. And, although Mrs. McLean was responsible for paying her utilities, she received a subsidy—a utility check from MDA—to apply toward her utility bills.[1]

Because, and only because, Mrs. McLean, on 10 October 1981, married David McLean, the father of her children, and reported her marriage to MHA, *as she was required to do*, her total rental payments increased to $171.00 per month. Mr. McLean's subsequent unemployment decreased the rental payment contribution to $73.00 per month effective 1 February 1982.

Mr. McLean failed to make the January, February, and March 1982 rental payments, totalling $332.00. When Mrs. McLean discussed the unpaid bills with him, he assaulted her. Mr. McLean was subsequently convicted of assault and nonsupport, and on the day of the trial (24 March 1982) moved out of the apartment. Perhaps as early as the first magistrate's hearing on 6 April 1982, but clearly by the time of the trial *de novo* in district court, MHA had notice of the parties' domestic situation and knew that Mr. McLean was no longer in the apartment.

---

1. In federally subsidized housing programs, "rent" generally includes a reasonable utility allowance. *See* 24 CFR §§ 880.201, 881.201, 882.102, 883.302 and 884.102 (1984). The utility allowance for an apartment such as the one Mrs. McLean was living in is forty-two dollars ($42.00) per month. Accordingly, if the amount of Mrs. McLean's income that is to go towards rent (including utilities) is less than forty-two ($42.00) dollars per month, Mrs. McLean will receive the difference between her rental payment and forty-two dollars ($42.00) in the form of cash or check. This money is then applied by Mrs. McLean towards her utility bill. For example, if Mrs. McLean has 0 income, she should then receive a credit of forty-two ($42.00) dollars from the Housing Authority to be used as payment for her utilities.

The majority's suggestion that there was no contractual relationship between MHA and Mr. McLean ignores the factual realities of the situation. Here, the amount of rent was based *solely* on Mr. McLean's income. MHA was relying on *his* estate and credit, and not on Mrs. McLean's estate and credit. (*Compare Presbyterian Hospital v. McCartha*, 66 N.C. App. 177, 310 S.E. 2d 409 (1984) in which this Court, in discussing the doctrine of necessaries, said: "[W]hen anyone sells or furnishes necessaries to a married woman in her individual capacity, *and in reliance upon her separate estate or credit*, it is the law in most jurisdictions that the husband is not liable, and that the creditor must seek payment from the one contracted with. [Citations omitted.]" *Id.* at 179, 310 S.E. 2d at 411. (Emphasis added.) In my view, the social policy that spun the doctrine of necessaries, *see Robertson v. Robertson*, 218 N.C. 447, 11 S.E. 2d 318 (1940) and *McClure v. McClure*, 64 N.C. App. 318, 307 S.E. 2d 212 (1983), *disc. rev. denied*, 310 N.C. 308, 312 S.E. 2d 651 (1984), is applicable here. After all, when Mrs. McLean married Mr. McLean, she lost what was apparently her only source of income — Aid to Families with Dependent Children (AFDC) since AFDC is conditioned on the father's absence from the home.

When the logic of MHA's argument is considered, not on some lofty abstract plane, but rather, in the context of real people who are cast out of what may be the only housing available to them, the conclusion that Mrs. McLean was wrongfully evicted from her federally subsidized housing becomes apparent. To allow Mrs. McLean to be evicted on the facts of this case would violate the legislative policy codified in N.C. Gen. Stat. § 157-2 (1982) of "the providing of safe and sanitary dwelling accommodations for persons of low income . . . for which public money may be spent. . . ." Moreover, if we carried MHA's argument to its illogical conclusion, this would be the result: Mr. McLean is a stranger to the lease, and he has no contractual relationship with MHA; his income should, therefore, not be considered by MHA at all; Mrs. McLean has no income, so when you exclude Mr. McLean's income because he is a stranger, no rent would be due MHA.

Separate and apart from my conclusion that the social policy underlying the doctrine of necessaries is applicable in this case is my further conclusion that the judgment for back rent and eviction should not have been entered against Mrs. McLean when she

was not individually at fault in reference to the nonpayment of rent. Due process requires a "good cause" analysis.

> Thus, in their attempt to cure the evils of discriminatory and arbitrary eviction procedures prevalent in federally-subsidized housing, the courts have established a standard of 'good cause' as a condition upon which tenancies in public housing may be terminated.

*Goler Metropolitan Apartments, Inc. v. Williams*, 43 N.C. App. 648, 651, 260 S.E. 2d 146, 149 (1979), *disc. rev. denied*, 299 N.C. 328, 265 S.E. 2d 395 (1980). In short, I believe there must be some causal connection—some nexus—between the imposition of the drastic sanction of eviction and Mrs. McLean's own conduct. *See Tyson v. New York City Housing Auth.*, 369 F. Supp. 513 (S.D. N.Y. 1974)

Finally, based on the above analysis, I also believe the trial court erred in evicting Mrs. McLean based on the nonpayment of utility bills.