LONG DRIVE APARTMENTS v. PARKER

[107 N.C. App. 724 (1992)]

---

LONG DRIVE APARTMENTS, PLAINTIFF/APPELLEE v. TESSIE PARKER, DEFENDANT/APPELLANT

No. 9120DC898

(Filed 20 October 1992)

1. **Landlord and Tenant § 13.1 (NCI3d)— federally subsidized private housing—material noncompliance under lease— termination of electrical services**

   The trial court did not err in a summary ejectment action by concluding that plaintiff was entitled to possession of the premises due to material noncompliance with the lease where the lease stipulated that defendant would provide electrical services to the apartment and the evidence at trial showed that defendant's electricity was terminated three times for nonpayment of amounts due. Although defendant contended that the lease violations do not rise to the level of "material noncompliance" so as to warrant ejectment, that interpretation fails to consider the express language of the lease agreement setting forth specific violations for which ejection may be sought. The evidence was sufficient to support a finding that defendant's failure to maintain electricity was characterized by the lease as a "Substantial Violation," and, furthermore, defendant had "created a physical hazard" and therefore materially breached the lease by allowing the electricity in her apartment to be cut off during periods of freezing temperatures.

   **Am Jur 2d, Landlord and Tenant §§ 175, 1039.**

2. **Landlord and Tenant § 13.1 (NCI3d)— lease—material breach— waiver of right to terminate**

   Plaintiff did not waive its right to terminate a lease through certain provisions in the Notice to Quit and Vacate where

the Notice did not, as defendant contended, provide defendant an opportunity to cure the breach, but merely afforded the tenant an opportunity to discuss the termination with the manager within ten days and specifically stated without qualification that the tenant must quit and vacate by the specified date. Plaintiff was not estopped from terminating the lease because it had twice before allowed defendant to remain on the premises after the breach was cured because there was no evidence that plaintiff intended to relinquish its rights under the lease. Additionally, the HUD-approved lease precludes automatic waiver where the landlord has acquiesced to certain past conduct in violation of the lease agreement.

**Am Jur 2d, Landlord and Tenant §§ 175, 1039.**

APPEAL by defendant from judgment entered 21 May 1991 in RICHMOND County District Court by *Judge Kenneth W. Honeycutt.* Heard in the Court of Appeals 22 September 1992.

Plaintiff Long Drive Apartments instituted this summary ejectment action against defendant Tessie Parker. Plaintiff operates a private housing complex which receives monthly subsidies from the United States Department of Housing and Urban Development (HUD) on behalf of low income tenants pursuant to Section 8 of the United States Housing Act of 1987. The defendant qualifies for and receives a rent subsidy from HUD and therefore does not pay any rent to plaintiff. For the same reason, defendant also receives a utility check from plaintiff which is required to be paid to Carolina Power & Light (CP&L), the utility services provider for the leased premises.

Defendant and her family moved into Long Drive Apartments in March of 1989. Plaintiff and defendant entered into a written lease agreement which stipulated, in pertinent part, that defendant agree to maintain electrical services to the leased premises. The lease agreement also provided that failure to maintain electricity would constitute a "Substantial Violation" of the lease agreement.

The evidence at trial tends to establish that on three separate occasions, defendant's electricity was terminated by reason of nonpayment of amounts due to the utility, CP&L. Defendant also endorsed and cashed the utility checks she received from plaintiff rather than sending them directly to CP&L. After electrical services were terminated for the third time, plaintiff notified defendant

that her failure to maintain electricity was a substantial violation of the lease agreement and delivered two Notices to Quit and Vacate, demanding surrender of the leased premises by 18 February 1991.

Plaintiff then brought a summary ejectment action against defendant in small claims court. The magistrate awarded plaintiff possession of the leased premises. Defendant appealed the magistrate's decision to the district court. The court conducted a trial *de novo* and granted plaintiff an order of ejectment. Defendant appeals.

*Law Offices of Mark C. Kirby, by Mark C. Kirby and Howard S. Kohn, for plaintiff-appellee.*

*North State Legal Services, by Candace Carraway and Carlene McNulty, for defendant-appellant.*

WELLS, Judge.

[1] Defendant first contends that the trial court erred in concluding that plaintiff was entitled to possession of the premises because plaintiff did not prove "material noncompliance" with the lease. Second, defendant contends that the trial court erroneously concluded that plaintiff had not waived its right to terminate the lease. We find no error.

Defendant asserts that the alleged lease violations do not rise to the level of "material noncompliance" so as to warrant ejectment. Paragraph 23 of the lease agreement provides:

The Landlord may terminate this Agreement only for: (1) the Tenant's material noncompliance with the terms of this Agreement; (2) the Tenant's material failure to carry out obligations under any State Landlord and Tenant Act; or (3) other good cause. . . . Material noncompliance includes, but is not limited to, nonpayment of rent, beyond any grace period available under State law; failure to reimburse the Landlord within 30 days for repairs made under Paragraph 11 of this Agreement; three late payments in a twelve month period; permitting unauthorized persons to live in the unit; serious or repeated damage to the unit or common areas; creation of physical hazards; serious or repeated interference with the rights and quiet enjoyment of other tenants; failure to repay unauthorized assistance payments; and giving the Landlord false information

regarding income or other factors considered in determining the Tenant's rent.

Defendant argues that "material noncompliance" is conduct which would constitute "good cause" for termination. Defendant asserts that to uphold an eviction for "good cause," it must be shown that a tenant's conduct so seriously injures or poses a hazard to the complex or other tenants that the tenant is no longer entitled to occupancy. Therefore, defendant contends, plaintiff may not evict defendant for material noncompliance (*i.e.* good cause) unless he has adversely affected the other tenants or the apartment complex.

Defendant's interpretation of material noncompliance as requiring "good cause," fails to consider the express language in the lease agreement setting forth the specific violations for which ejection may be sought. Plaintiff, under paragraph 23 of the lease agreement, elected to terminate defendant's tenancy for "material noncompliance" which is specifically defined in the lease to include "serious or repeated damage *to the unit* or common areas; [or] *creation of physical hazards*." (Emphasis added.) The lease does not require, in addition to "material noncompliance," proof of "other good cause" to support termination. The trial court found and we agree that plaintiff sustained its burden in proving "material noncompliance" as that term is defined in the lease.

The evidence presented is sufficient to support a finding that the failure to maintain electricity is characterized by the lease itself as a "Substantial Violation." Furthermore, defendant *had* "created a physical hazard" and therefore materially breached the lease by allowing the electricity in her apartment to be cut off during periods of freezing temperatures. Such conditions could cause adverse effects such as unsanitary conditions, frozen pipes, risk of fire, and uninsurability. The fact that there was no actual physical damage to the premises is immaterial. *See Maxton Housing Authority v. McLean*, 70 N.C. App. 550, 320 S.E.2d 322 (1984), *rev'd on other grounds*, 313 N.C. 277, 328 S.E.2d 290 (1985). This portion of the lease was designed to preserve the safety of the dwelling unit and fellow tenants by permitting termination where a tenant is in material breach of the lease agreement. Therefore, allowing termination of electrical services creates a physical hazard sufficient to constitute "material noncompliance" under this lease.

The cases relied on by defendant requiring a separate showing of "good cause" for termination are inapposite. One Fourth Circuit

case merely held that a landlord could not terminate a federally subsidized housing lease at the end of a successive term without good cause. In other words, there must a reason for termination of the tenancy besides the expiration of the lease term in the case of federally subsidized housing. *See Swann v. Gastonia Housing Authority*, 675 F.2d 1342 (1982). Another case which required a showing of "good cause" for termination was strictly limited to tenants living in *public housing* as opposed to private tenancies. *Goler Metropolitan Apartments v. Williams*, 43 N.C. App. 648, 260 S.E.2d 146 (1979). None of these cases added a "good cause" requirement to termination for a tenant's material noncompliance with the lease.

[2] Having found defendant to have materially breached the lease agreement, the question becomes whether plaintiff waived its right to terminate the lease. Defendant asserts that plaintiff's Notice to Quit and Vacate gave defendant the opportunity to cure the breach by providing proof that electrical service was restored within ten days. Defendant argues that in giving an alternative to forfeiture, plaintiff waived its right to forfeiture when defendant met the condition of the notice because the notice constituted an election to continue the lease in effect if certain conditions were met.

The evidence does not support defendant's contention. The Notice to Quit and Vacate, by its express terms, did not provide defendant with an opportunity to cure. The notice merely afforded the tenant the opportunity to discuss the termination with the manager within ten days. Furthermore, the notice specifically stated, without qualification, that the tenant must quit and vacate by the date contained therein.

Defendant next argues that plaintiff is estopped from terminating the lease because plaintiff had twice before allowed defendant to remain on the leased premises after she restored her power. Plaintiff's prior actions, defendant contends, constituted an implied promise not to strictly enforce the part of the lease requiring maintenance of electrical services. This "implied waiver" lulled defendant into thinking that failure to maintain electrical services would not be grounds for eviction if she could cure within ten days.

Again, we find this argument to be without merit. In order to prove waiver by estoppel, defendant must show that there was an express or implied promise on the part of the plaintiff to waive its right to terminate the lease and that defendant detrimentally

relied upon such promise. The essential elements of waiver are the "existence at the time of the alleged waiver of a right, advantage or benefit, the knowledge, actual or constructive, of the existence thereof, *and an intention to relinquish such right*, advantage or benefit." *J. W. Cross Industries v. Warner Hardware Co.*, 94 N.C. App. 184, 379 S.E.2d 649 (1989). (Emphasis added.) The question of whether the plaintiff intended to excuse a lease violation must be inferred from the facts and circumstances. *Id.* On the evidence in this case, it would be absurd to conclude that plaintiff impliedly waived its right to terminate by allowing defendant to cure on past occasions. There was no course of conduct between the parties that would have lulled the defendant into believing future lease violations of this nature would be tolerated. There was no evidence presented from which it could be inferred that plaintiff intended to excuse defendant's failure to maintain electricity. Furthermore, evidence of plaintiff's conduct does not raise the inference that plaintiff did not intend to declare the lease forfeited if defendant materially breached the lease. In short, there was no evidence that plaintiff intended to relinquish its rights under the lease. In addition, the HUD-approved lease agreement between the parties clearly states:

> 28. NON-WAIVER: Failure of the Landlord to insist upon the strict performance of the terms, covenants, agreements and conditions herein contained, or any of them, shall not constitute or be construed as a waiver or relinquishment of the Landlord's rights thereinafter to enforce any such terms, covenants, agreements, or conditions, but the same shall continue in full force and effect.

This section precludes an automatic waiver where the landlord has acquiesced to certain past conduct in violation of the lease agreement. The fact that plaintiff allowed defendant to cure her breach on two prior occasions would not indicate the relinquishment of its right to terminate for all future violations. If that were the case, a landlord could never give a tenant a second chance after an initial breach without risk that the landlord and fellow tenants would be condemned to suffer a series of infinite breaches of their safety and security.

Since defendant was in material noncompliance with the lease agreement and plaintiff had not waived its right to terminate,

we find the trial court's awarding possession of the leased premises to the plaintiff to be correct.

No error.

Judges ORR and GREENE concur.