An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-191

Filed 19 November 2025

Henderson County, No. 24CVD000692-440

GRAHAM MCMURRAY and
JAMIE MCMURRAY, Plaintiffs,

v.

JOHN KOTSIAS and
RITA KOTSIAS, Defendants.

Appeal by defendants from order entered 12 August 2024 by Judge Gene B. Johnson in Henderson County District Court. Heard in the Court of Appeals 23 September 2025.

*Roberts & Stevens, PA, by David Hawisher, for plaintiff-appellees.*

*John Kotsias and Rita Kotsias, pro se defendant-appellants.*

FLOOD, Judge.

Defendants John and Rite Kotsias appeal the trial court's order granting summary ejectment. On appeal, Defendants argue the trial court erred by: first, concluding the "notice to quit was proper," Defendants "were holding over," and Plaintiffs Graham and Jamie McMurray "were entitled to possession"; second, "exceed[ing] its authority when it denied Defendants the opportunity to amend" their

waiver defense; third, "denying the merit of Defendants' waiver defense when it applied the requirements for equitable estoppel to the facts instead of the requirements for waiver"; and fourth, "exceed[ing] its authority in taxing costs" of the litigation to Defendants jointly and severally. Upon careful review, we hold the trial court did not err in: finding the notice by Plaintiffs was proper, where they provided thirty days' notice per the Lease; denying Defendants an opportunity to amend their defense; exercising its authority to tax the costs jointly and severally; or denying Defendants' waiver defense under applicable case law.

## I. **Factual and Procedural Background**

In August 2022, Plaintiffs entered into a written lease agreement (the "Lease") for a month-to-month tenancy with Defendants. The Lease included the following relevant provisions:

> Guest[s] staying over [seven] days without the written consent of OWNER shall be considered breach of this agreement[.] ONLY the above listed individuals and/or animals AND NO OTHERS as well as no pets either shall occupy the subject residence for more than [seven] days unless the expressed written consent of OWNER obtained in advance! Property Owners are not required to give written consent for anytime what so ever! Failure to get this written consent will result in Notice to Terminate Tenancy, which will be served as Tenant(s) will be guilty of Breach of Contract!
>
> . . . .
>
> Either party shall terminate this agreement by giving a Written Notice to Terminate Tenancy with a minimum of 30 days prior to the date of termination. . . . If you occupy

a home from the 1st of the month thr[ough] the 5th of the month you will be responsible for the entire month's rent [r]egardless of [the] day you vacate.

The Lease also provided that no pets would be allowed without the written consent of Plaintiffs.

On 12 September 2023, Plaintiffs provided notice (the "First Notice") to Defendants that Defendants were in breach of the Lease for allowing pets and a guest to reside in the home without written permission of Plaintiffs, and requested that Defendants vacate the home within seven days from the notice date. The First Notice provided: "You have been told to leave the premises. If you do not leave an eviction action will be initiated against you which will be ordered by landlord and executed by the Clerk of Courts Office of Henderson County."

Defendants remained in the premises, Plaintiffs did not proceed with any action pursuant to the First Notice, and Plaintiffs subsequently provided another notice (the "Second Notice") on 25 September 2023, stating "[t]he Landlord hereby advises you that they are terminating the tenancy by Thirty (30) days' notice as specified in your lease with the Landlord[.] You should within 30 days of today's date (9/25/2023) remove yourself, your belongings and all others from the residence." The Second Notice further provided that "[s]hould you fail to remove yourself, your belongings and all others, the Landlord will petition the Court to remove you and order you to pay the expenses associated with said removal . . . You should further pay your rent as it comes due under your lease agreement." Defendants acknowledged

their receipt of the Second Notice.

Defendants continued to occupy the premises, paying Plaintiffs rent each month. On 28 January 2024, Plaintiffs provided a third notice (the "Third Notice"), and Defendants acknowledged their receipt of the Third Notice. Again, Defendants did not vacate the premises and continued to make payments to Plaintiffs from October 2023 until April 2024.

On 20 March 2024, Plaintiffs filed a complaint for summary ejectment, claiming Defendants were holdover tenants. Defendants filed an answer, contending there was insufficient notice and "the lease was extended by virtue of [Plaintiffs] accepting rent monies paid[,]" thus waiving the termination notice. Plaintiffs moved for summary judgment on 14 June 2024, arguing the pleadings and affidavits "show there is no material issue of fact in dispute." Defendants responded to Plaintiffs' motion, contending there were facts in dispute as well as requesting ADA accommodations and further discovery. The trial court granted Defendants' request for accommodations, but denied Defendants' request for further discovery. The trial court, however, agreed with Defendants that there were facts in dispute, and thus denied Plaintiffs' motion for summary judgment.

On 7 August 2024, the trial court held a hearing on the matter and found that:

> 15. The Second Notice complied with the termination of tenancy provision contained in the Lease.
>
> . . . .

22. The gravamen of the Defendants' Defense of Waiver is that the Plaintiff accepted Monthly Rent after the Second Notice. However, the Defendants did not present [a] scintilla of evidence reflecting that they had relied upon the Plaintiffs' acceptance of the Monthly Rent to their detriment or harm. Further, the Defendants did not present any evidence that they changed their conduct in any way as result of the Plaintiffs' acceptance of the Monthly Rent. The Defendants merely continued doing that which they had been doing since entering into the Lease, to wit: residing in the Leased Premises and paying Monthly Rent.

23. Additionally, the Plaintiffs duly provided the Defendant[s] with the First Notice, the Second Notice, and the Third Notice which clearly reflected the Plaintiffs' intent and desire that the Defendants vacate the Leased Premises.

. . . .

25. Pursuant to the duly provided Second Notice, the month-to month tenancy of the Lease terminated on 26 October 2023 (thirty days from the date of the Second Notice).

26. The Defendants have failed to vacate the Leased Premises in accordance with the Lease and the Second Notice and are holding over.

The trial court subsequently ordered Defendants to vacate the premises on 12 August 2024. The trial court further ordered the costs of the action to be taxed against "Defendants, jointly and severally." On 6 September 2024, Defendants timely appealed from the trial court's order.

## II. **Jurisdiction**

This Court has jurisdiction to hear an appeal from a final judgment from a

district court, pursuant to N.C.G.S. § 7A-27(b)(2) (2023).

## III. <u>Analysis</u>

On appeal, Defendants argue the trial court erred by: (A) concluding the "notice to quit was proper," Defendants "were holding over," and "Plaintiffs were entitled to possession"; (B) "exceed[ing] its authority when it denied Defendants the opportunity to amend" their waiver defense; (C) "denying the merit of Defendants' waiver defense when it applied the requirements for equitable estoppel to the facts instead of the requirements for waiver"; and (D) "exceed[ing] its authority in taxing costs Defendants" jointly and severally. We address each argument, in turn.

## A. Contested Conclusions of Law

Defendants first argue the trial court erred by concluding the "notice to quit was proper," Defendants "were holding over," and "Plaintiffs were entitled to possession." Specifically, Defendants argue that since the Lease "established that the tenancy was from the first day to the last day of the calendar month[,]" "the date of termination of the tenancy is [therefore] the last day of the calendar month[,]" and thus, "[t]he trial court's position that [the] 'date of termination' does not have to coincide with the end of a current term of tenancy is an error in law, an abuse of discretion[,] and raises the issue of ambiguity in the [L]ease provisions."[1]

"Contract interpretation is a matter of law, and the standard of review for this

---

[1] Although this argument was not made in Defendants' answer, Defendants presented this argument before the trial court at the hearing according to the Record.

Court is *de novo.*" *Shelton v. Duke Univ. Health Sys., Inc.*, 179 N.C. App. 120, 123 (2006). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *In re S.W.*, 298 N.C. App. 39, 44 (2025) (citation omitted).

"It is well settled in North Carolina that a periodic tenancy does not terminate automatically at the end of any particular term[,]" and instead, "month-to-month tenancies, like other tenancies from 'period to period[,]' continue to renew themselves 'indefinitely' until they are terminated at the end of one of the periods by a proper notice by either the lessor or the lessee in accordance with the law." *Goler Metro. Apartments, Inc. v. Williams*, 43 N.C. App. 648, 652 (1979). Although the law allows a month-to-month tenancy to be terminated if given "notice of seven days" pursuant to N.C.G.S. § 42-14 (2023), a written lease signed by the parties will otherwise control, *see Cherry v. Whitehurst*, 216 N.C. 340 (1939) (holding that a tenancy termination statute "does not exclude the rights of the parties to stipulate differently from its provisions, which are only permissive").

"Written contracts are to be construed and enforced according to their terms" and "must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, gathered from the language employed by them." *Galloway v. Snell*, 384 N.C. 285, 287–88 (2023) (citations and internal quotations omitted). "When the language of a contract is clear and unambiguous, effect must be given to its terms[.]" *Id.* at 288 (citation omitted). "An ambiguity exists in a contract

when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Register v. White*, 358 N.C. 691, 695 (2004).

"An ambiguity can exist when, even though the words themselves appear clear, the specific facts of the case create more than one reasonable interpretation of the contractual provisions." *Id.* "If a written contract is ambiguous, the contract's meaning and effect is a factual question for the jury and parol evidence may be introduced not to contradict, but to show and make certain what was the real agreement between the parties." *Galloway*, 384 N.C. at 288 (citation and internal quotations omitted).

Here, the Lease provided: "Either party shall terminate this agreement by giving a Written Notice to Terminate Tenancy with a minimum of *30 days prior to the date of termination*." (emphasis added). The trial court found that "[t]he tenancy of the Lease . . . was month-to-month, beginning on the first day of each month[,]" which would mean that the last day of each month would be the end of a tenancy period. Defendants contend that, under the Lease, the "'date of termination' refers to the date of the expiration of the tenancy term, (the last day of the calendar month)[,]" while Plaintiffs contend, and the trial court found, that the same lease provision means Plaintiffs "can terminate the tenancy any time during the month[,]" if given notice thirty days before that date.

As we explained in *Goler Metropolitan Apartments*, a month-to-month tenancy will "continue to renew [] 'indefinitely' until [it is] terminated at the *end of one of the*

*periods* by a proper notice[.]" 43 N.C. App. at 652 (emphasis added). Thus, "termination" is different from "period[,]" such that the "end of a tenancy period" refers to the last day of a period (i.e., the last day of the month for a month-to-month tenancy) while the "date of termination" refers to the termination of the automatic renewal of a tenancy period. *See id.* Defendants' contention—that "the [thirty] day minimum notice would have to be a minimum of [thirty] days prior to the last day of the calendar month"—is overruled; the Lease did not specify that the written notice to terminate the tenancy required thirty days prior to the date of the end of a tenancy period.

Because the phrase "date of termination" here is not "capable of several reasonable interpretations[,]" we discern no ambiguity. *See Register*, 358 N.C. at 695. Thus, the trial court did not err in finding the Second Notice was proper where Plaintiffs gave Defendants thirty days' notice, per the controlling Lease. *See Cherry*, 216 N.C. 340.

## B. Amendment of Defendants' Waiver Defense

Defendants next argue the trial court "exceeded its authority when it denied Defendants the opportunity to amend" their waiver defense. This argument, however, has been abandoned where Defendants failed to preserve this issue on appeal. *See* N.C.R. App. P. 10(a) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific

grounds were not apparent from the context.").[2] Defendants further failed to present any legal support for this argument. *See K2HN Constr. NC, LLC v. Five D Contractors, Inc.*, 267 N.C. App. 207, 213 (2019) ("This Court has routinely held an argument to be abandoned where an appellant presents argument without . . . authority[.]").

### C. Denying Defendants' Waiver Defense

Defendants next argue the trial court erred by "denying the merit of Defendants' waiver defense when it applied the requirements for equitable estoppel to the facts instead of the requirements for waiver[.]" Specifically, Defendants contend Plaintiffs waived their right to evict under *Kent v. Humphries*, 303 N.C. 675, 679 (1981), by accepting rent payment from Defendants, "which naturally and justly led [Defendants] to believe that [Plaintiffs] had so dispensed with the right to evict [Defendants.]" Defendants, as we understand their argument, seem to contend that the trial court should have made a finding as to whether Plaintiffs intended to relinquish their right to evict, rather than finding whether Defendants relied on Plaintiffs' conduct. In support of this argument, Defendants cite the secondary source *American Jurisprudence*, which provides: "The intent to relinquish a right is a necessary element of waiver but not of estoppel[,] while detrimental reliance is a

---

[2] The only evidence of a motion to amend is reflected in the transcript of Defendants' narration of the trial court hearing, during which Defendant Rita Kostsias "made an oral request for the opportunity to amend Defendants' [Answer.]" The trial court responded that an appropriate written motion to amend their answer was not before the court for consideration.

necessary element of estoppel but not of waiver." 28 *Am. Jur. 2d Estoppel and Waiver* § 35 (2011).

A trial court's "factual findings made under a misapprehension of the controlling law may be set aside on the theory that the evidence should be considered in its true legal light." *Woodridge Homes Ltd. P'ship v. Gregory*, 205 N.C. App. 365, 372 (2010) (citation modified). A trial court's conclusions of law are reviewed de novo. *Id.* at 372.

Our Supreme Court has defined a waiver as "an intentional relinquishment of a known right[,]" such that "[a] person may expressly dispense with the right by a declaration to that effect, or he may do so with the same result by conduct which naturally and justly leads the other party to believe that he has so dispensed with the right." *Guerry v. American Trust Co.*, 234 N.C. 644, 648 (1954).

Defendants contend that under *Kent*, the trial court should have found Plaintiffs waived their right to evict. 303 N.C. at 679. Defendants argue that "[a]pplying *Kent* to the facts of the instant case, [Plaintiffs'] acceptance of rent payments on the 1st of October, November, December 2023, and January, February, March, April 2024 created periodic month-to-month tenancies[,]" such that Plaintiffs waived their right to evict from their termination notices.

In *Kent*, the landlords, after accepting rent from the tenant under an invalid lease, requested the Court hold the tenant as a "tenant at will" who could be evicted at any time. *Id.* at 678. The Court disagreed and held that "when a tenant enters into

possession under an *invalid lease* and tenders rent which is accepted by the landlord, a periodic tenancy is created[,]" such that the tenant was not "at will." *Id.* (emphasis added). The Court reasoned that "[i]t seems patently unfair to us that a tenant who takes under a lease void by operation of the statute of frauds, but who then pays rent as it becomes due periodically, should have only the barest of legal rights as a tenant at will." *Id.*

In the instant case, the trial court found:

> 22. The gravamen of the Defendants' Defense of Waiver is that the Plaintiff accepted Monthly Rent after the Second Notice. However, the Defendants did not present [a] scintilla of evidence reflecting that they had relied upon the Plaintiffs' acceptance of the Monthly Rent to their detriment or harm. Further, the Defendants *did not present any evidence that they changed their conduct in any way as result of the Plaintiffs' acceptance of the Monthly Rent.* The Defendants merely continued doing that which they had been doing since entering into the Lease, to wit: residing in the Leased Premises and paying Monthly Rent.

(emphasis added)

Unlike the lease in *Kent*, the Lease here was not invalid, such that Defendants were not tenants at will, and acceptance of rent did not create a new periodic tenancy. Instead, the present case is analogous to and answered by *Mauney v. Norvell*. 179 N.C. 628 (1920).

In *Mauney*, our Supreme Court held that where a landlord, after giving notice to terminate, sues under a valid lease for possession rather than for rent, "[t]he landlord does not *waive* anything if he accepts his rents every month, instead of

waiting [for] the termination of the suit." 179 N.C. at 628 (emphasis added). The

Court explained:

> Acceptance of the rents by the landlord does not create a tenancy . . . nor preclude the landlord from recovery. In an action to recover the possession, as the [landlord] is entitled to damages for the occupation of the premises, the [landlord] can accept voluntary payments without thereby ratifying the tenant's possession. The receipt of money for the use of premises is not inconsistent with a demand for possession, for it has not misled the [tenant], nor put him to any disadvantage.

*Id.* at 628 (citation modified). The Court further noted "[t]he payment of the rent did

not create a lease between the plaintiff and the defendant, but was simply for the use

and occupation of the premises for which therefore he could not be charged upon

eviction." *Id.* at 628.

Like the landlord in *Mauney*, Plaintiffs, after giving notice to terminate, sued

for possession and accepted payment during Defendants' holdover period. *See*

*Mauney*, 179 N.C. at 628. Like in *Mauney*, "[t]he receipt of money for the use of

premises is not inconsistent with a demand for possession[,]" see *id.* at 628, and the

action was not found to have misled Defendants.

Accordingly, we hold the trial court did not err in denying Defendants' defense

where it properly found Plaintiff did not waive their right to evict. *See Mauney*, 179

N.C. at 628; *Guerry,* 234 N.C. at 648; *Woodridge Homes Ltd. P'ship*, 205 N.C. App. at

372.

### D. Taxing Costs

Lastly, Defendants argue that the trial court "exceeded its authority in taxing costs [to] Defendants" jointly and severally. Specifically, Defendants contend the "trial court made no [findings of fact] nor [conclusions of law] specifying on what authority it based its taxation of costs jointly and severally" and that it "is inequitable to charge [Defendants] twice for a cost that was paid by [Plaintiffs] once."

Our statutes provide that, "[i]n actions where allowance of costs is not otherwise provided by the General Statutes, costs may be allowed in the discretion of the court." N.C.G.S. § 6-20 (2023). Defendants fail to present any legal argument that this taxing of costs was an abuse of discretion; thus, we hold this argument is abandoned. *See K2HN Constr. NC, LLC*, 267 N.C. App. at 213 ("This Court has routinely held an argument to be abandoned where an appellant presents argument without . . . authority[.]"); N.C.R. App. P. 28(b)(6) (providing that "[i]ssues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned").

## IV. <u>Conclusion</u>

Upon careful review, we hold the trial court did not err in: finding the notice by Plaintiffs was proper, where they provided thirty days' notice per the Lease; denying Defendants an opportunity to amend their defense; exercising its authority to tax the costs jointly and severally; or denying Defendants' waiver defense under applicable case law.

AFFIRMED IN PART AND DISMISSED IN PART.

Judges GORE and FREEMAN concur.

Report per Rule 30(e).